**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| VANGUARD NATURAL | ) | Case No. 19-31786 (DRJ) |
| RESOURCES, INC., *et. al.*,[1] | ) | |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

---

**ENCANA'S MOTION TO RECONSIDER, ON A LIMITED BASIS,**
**THE MINERAL INTEREST PAYMENT ORDER**
[Related to Dkt. Nos. 13 and 58]

---

**THIS MOTION SEEKS AN ORDER THAT MAY ADVERSELY AFFECT YOU. IF YOU OPPOSE THE MOTION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE. IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY. YOU MUST FILE AND SERVE YOUR RESPONSE WITHIN 21 DAYS OF THE DATE THIS WAS SERVED ON YOU. YOUR RESPONSE MUST STATE WHY THE MOTION SHOULD NOT BE GRANTED. IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU. IF YOU OPPOSE THE MOTION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST ATTEND THE HEARING. UNLESS THE PARTIES AGREE OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE HEARING AND MAY DECIDE THE MOTION AT THE HEARING. REPESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.**

---

Encana Oil & Gas (USA) Inc. ("ENCUSA") and Newfield Exploration Mid-Continent Inc. ("Newfield" and together with ENCUSA, "Encana") respectfully submit this motion (the "Motion") to reconsider, in limited part, the *Final Order (I) Authorizing the Payment of Mineral Obligations and (II) Granting Related Relief* (the "Mineral Interest Payment Order"),[2] which

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number are: Vanguard Natural Resources, Inc. (1494); Eagle Rock Acquisition Partnership, L.P. (6706); Eagle Rock Acquisition Partnership II, L.P. (0903); Eagle Rock Energy Acquisition Co., Inc. (4564); Eagle Rock Energy Acquisition Co. II, Inc. (3364); Eagle Rock Upstream Development Company, Inc. (0113); Eagle Rock Upstream Development Company II, Inc. (7453); Escambia Asset Co. LLC (3869); Escambia Operating Co. LLC (2000); Vanguard Natural Gas, LLC (1004); Vanguard Operating, LLC (9331); and VNR Holdings, LLC (6371). The location of the Debtors' service address is: 5847 San Felipe, Suite 3000, Houston, Texas 77057.

[2] Dkt. No. 58.

1

granted the *Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing Payment of (A) Obligations Owed to Holders of Mineral and Other Interests and Non-Op Working Interests and (B) Joint Interest Billings, and (II) Granting Related Relief* (the "Mineral Interest Payment Motion").[3]

## I.
## INTRODUCTION

1.       Encana is involved in the exploration and development of numerous mineral properties in which certain of the Debtors[4] and Encana own working interests and royalty interests. In some properties, Encana serves as operator pursuant to joint operating agreements, other contracts or compulsory pooling orders, and certain of the Debtors own non-operating working interests or other interests. In other properties, a Debtor serves as operator pursuant to joint operating agreements, other contracts or compulsory pooling orders, and Encana owns non-operating working interests or other interests. The properties in which Encana owns interests ("Encana's Interests") are located in Texas and Oklahoma.[5]

2.       In situations in which the Debtors operate and Encana owns non-operating working interests, the Debtors receive on a monthly basis proceeds from the sale of hydrocarbons that are attributable to Encana's Interests. These production proceeds are property of Encana and not property of the Debtors' estates. Additionally, Encana holds liens (statutory and/or consensual) against the Debtors' interests in the underlying properties and their share of production proceeds to secure the Debtors' continuing obligation to deliver Encana's proportionate share of production.

---

[3] Dkt. No. 13.

[4] All capitalized terms not herein defined shall have the meanings ascribed to them in the Mineral Interest Payment Motion.

[5] Encana is in the process of obtaining information to identify all of its contractual relationships on an entity by entity basis with the Debtors. Encana reserves all rights, and nothing in this Motion is intended to exclude or limit rights or interests that are not specifically identified, including with respect to particular affiliates that are not identified by name herein.

2

503411.000022 22108860.6

3.      In situations in which Encana serves as operator and the Debtor owns non-operating working interests, the Debtors are invoiced and submit payments for drilling, completion and operating costs relating to operations conducted on the underlying properties.  And, Encana holds certain rights including statutory liens, consensual liens, recoupment and/or set-off rights against the Debtors' share of production proceeds and/or the Debtors' interests in the underlying properties to secure the Debtors' continued performance of its obligations to Encana.

4.      Encana does not object to the continued distribution of production proceeds and the payment of Mineral Obligations (on a pre-petition and post-petition basis) to Encana or other similarly situated mineral interest owners.  However, the Mineral Interest Payment Order provides a mechanism whereby the Debtors can apparently avoid and claw back any payments made to parties if it is later determined that such funds were property of the estate.  This claw back power, based solely on a determination of whether funds were property of the estate, is overbroad and improper.  As indicated in the Mineral Interest Payment Motion, payments on account of Mineral Obligations are justified to avoid "dire consequences" – including to ensure that valuable leases are not terminated, to avoid the imposition of consensual or statutory liens, to avoid the accrual of penalties, interest, costs, and fees which may be provided by statute or other applicable law, and to avoid the exercise of rights of recoupment and potentially the loss of ownership rights and property interests (in situations involving the payment of lessor royalties and capital expenses, drilling and completion costs).  These rights and remedies provide clear justification for authorizing payments on account of mineral interests.

5.      However, the Mineral Interest Payment Order, as presently written, appears to disregard those rights by limiting the avoidance analysis to whether a particular payment was property of the estate and allowing automatic avoidance without regard to and without preserving

3

the rights held by the recipient at the time of the payment.  Allowing the Debtors to avoid payments on this basis would extinguish substantive property rights of Encana and leave Encana (and similarly situated mineral interest owners) in a substantially worse position than if the payment had not been made in the first place.  Therefore, the Debtors' ability to avoid any payment should be expressly subject to Encana's defenses, rights, and remedies, and to the extent of any avoidance, Encana should be placed in the same position that it would have been in, vis-à-vis the Debtors and other parties, had the payment not been made.

## II.
## BACKGROUND

### A.    General Background

6.    On March 31, 2019 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  The Debtors' cases are being jointly administered. No request for the appointment of a trustee or examiner has been made in the Debtors' cases.

### B.    Relationship between Encana and the Debtors

7.    Encana is involved in the exploration and development of numerous mineral properties in which certain of the Debtors and Encana own working interests and royalty interests. The properties are located in Texas and Oklahoma.  In some properties, Encana serves as operator pursuant to joint operating agreements, other contracts or compulsory pooling orders,[6] and certain

---

[6] Under Oklahoma's forced pooling statute, two or more owners of oil and gas leases can be force pooled into a unit by order of the Oklahoma Corporation Commission (the "Commission"). *See* Okla. Stat. Ann. tit. 52, § 87.1. Forced pooling is an exercise of the state police power to protect the correlative rights of the owners in a common source of oil and gas supply. *See Hold Oil Corp. v. Corp. Commission*, 746 P.2d 692, 694 (Okla. 1987). Under a forced pooling order, the Commission designates the unit, specifies the percentage ownership, and designates which owner will serve as Operator, among other things. *Id*. at 694. Under forced pooling, the lease owners are not required to proceed with development under a Joint Operating Agreement, as is the practice in Texas. Instead, the Commission in its forced

4

of the Debtors own non-operating working interests or other interests.  In other properties, one of

the Debtors serves as operator pursuant to joint operating agreements, other contracts or

compulsory pooling orders, and Encana owns non-operating working interests or other interests.

In situations in which a Debtor serves as operator, Encana either takes hydrocarbons "in kind" or

the Debtor markets and sells hydrocarbons attributable to Encana's interests, collects production

proceeds on behalf of Encana and distributes Encana's proportionate share of such proceeds.  In

situations in which Encana owns cost-bearing interests (i.e. working interests), the Debtor bills

Encana through Authorizations for Expenditure ("AFEs")[7] and Joint Interest Billings ("JIBs") for

its proportionate share of the expenses relating to operations conducted on the properties.  In

situations in which Encana operates, the Debtor either takes hydrocarbons "in kind" or Encana

markets and sells hydrocarbons attributable to the Debtor's interests, collects production proceeds

on behalf of the Debtor and distributes the Debtor's proportionate share of such proceeds.  In

situations in which the Debtor owns cost-bearing interests (i.e. working interests), Encana bills the

Debtor through AFEs and JIBs for its proportionate share of the expenses relating to the operations

conducted on the properties.

**C.     The Mineral Interest Payment Motion and Final Mineral Interest Payment Order**

8.      On April 1, 2019, the Debtors filed the Mineral Interest Payment Motion.  Under

the Mineral Interest Payment Motion, the Debtors sought interim and final authority to continue

distributing production proceeds and paying Mineral Obligations in the ordinary course of

business.

---

pooling order specifies the "managerial responsibility of a designated unit operator in developing for, producing and selling oil or gas from the unitized pool." *Id*.

[7] In circumstances involving capital expenses, including drilling and completion costs, pre-payments for estimated costs are invoiced through "Authorizations for Expenditure" or "AFEs" and other notices sent pursuant to the applicable contract or pooling order.

503411.000022 22108860.6

9.     On the same day, the Court entered the Mineral Interest Payment Order on a final

basis.  Paragraph 4 of the Mineral Interest Payment Order provides:

> If any holder of a Mineral and Other Interest, Non-Op Working Interest, or right to
> payment under the JIBs, or any other party accepts payment on account of any
> Mineral Obligations under this Final Order, and the Debtors' interests in such
> payments on account of Mineral Obligations subsequently are recharacterized or
> otherwise determined by the Court after notice and a hearing to constitute property
> of the Debtors' estates, the Debtors are authorized, but not directed, to avoid such
> payment as a postpetition transfer under section 549 of the Bankruptcy Code, and
> the holder of such Mineral and Other Interest, Non-Op Working Interest, or right
> to payment under the JIBs, or other party who had accepted such payment shall be
> required to immediately repay to the Debtors any payment made to it on account of
> its asserted claim to the extent the aggregate amount of such payments exceeds the
> postpetition obligations then outstanding, without the right of setoff, claims,
> provision for payment of reclamation or trust fund claims, or otherwise.

## III.
## REQUESTED RELIEF

10.     Encana requests the Court reconsider the Mineral Interest Payment Order on a

limited basis and include language that would:

a.  prohibit the Debtors from clawing back payments authorized by the Mineral
Interest Payment Order; or

b.  clarify that to the extent it is determined that a payment in issue was property
of the estate, such payment may only be avoided if it is also determined that the
recipient, at the time of the payment, did not have valid liens (statutory or
consensual), rights of recoupment or other rights justifying the payment of the
amounts owed.  Further, to the extent the payment is avoided, the Court will
place the parties back in the same positions that they would have been in had
the payment not been made.

## IV.
## ARGUMENT

A.     **Reconsideration of the Mineral Interest Payment Order is Appropriate to Protect
Mineral Interest Owners.**

11.     Federal Rule of Civil Procedure 59(e), as incorporated by Federal Rule of

Bankruptcy Procedure 9023 ("Rule 59"), permits a court to alter or amend a judgment in order to

correct manifest errors of fact or law or to present newly discovered evidence.  Fed. R. Bankr. P.

6

9023; Fed. R. Civ. P. 59; *In re Rodriguez*, Case No. 02-10605, 2010 WL 3943934, at \*1 (Bankr. S.D.Tex. Oct. 5, 2010) (Isgur, J.); *In re Oak Brook Apartments of Henrico Cnty.*, 126 B.R. 535, 536 (Bankr. S.D. Ohio 1991).[8]

12.      Motions to reconsider "are within the discretion of the trial court to grant or deny." *In re Oak Brook Apartments of Henrico Cnty.*, Ltd., 126 B.R. at 536.  Although Rule 59 refers to "judgments," bankruptcy courts have routinely applied it to orders.  *In re Hodes*, 289 B.R. 5 (D. Kan. 2003); *In re Donohue*, 410 B.R. 311 (Bankr. D. Kan. 2009); *In re Gale*, 144 B.R. 415 (Bankr. E.D. Ark. 1992).

13.      In addition, Federal Rule of Civil Procedure 60, as incorporated by Federal Rule of Bankruptcy Procedure 9024, provides that a court may relieve a party from a final order for the following reasons:

> (1) mistake, inadvertence, surprise, or excusable neglect;
> (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);
> …
> (6) any other reason that justifies relief.

Fed. R. Bankr. P. 9024; Fed R. Civ. P. 60(b).

14.      As courts of equity, "bankruptcy courts have broad discretion under Rule 9024 to reconsider, vacate, or modify past orders. [Rule 9024] does not restrict the bankruptcy court's power to reconsider any of its previous orders when equity so requires." *G.W. Palmer & Co., Inc. v. Dye (In re Tanimura Distrib., Inc.),* BAP CC-10-1220-KIPAD, 2011 WL 3299933, at \*6 (B.A.P. 9th Cir. 2011); *see also Maxwell Newspapers, Inc. v. The Travelers Indemnity Co. (In re Maxwell Newspapers, Inc.)*, 170 B.R. 549, 550 (S.D.N.Y. 1994).

---

[8] This Motion is being filed within the fourteen (14) day period provided for in Rule 9023 of the Federal Rules of Bankruptcy Procedure, as the Cash Management Order was entered on April 1, 2019.

503411.000022 22108860.6

15.     Although there may be sound justification for the Court to authorize the continued payment of Mineral Obligations, due process warrants consideration of the requested relief on notice.  Congress implemented Bankruptcy Rules 6003 and 6004 to ensure the full and fair consideration of any proposed use, sale or lease of property while providing parties in interest with a meaningful opportunity to be heard.  As further described below, the Mineral Interest Payment Order, as written, extinguishes rights that would otherwise exist under applicable law.  By accepting mineral interest payments, Encana and similarly situated parties are unfairly required to waive rights and remedies to which they would otherwise be entitled.  Thus, the Mineral Interest Payment Order should be amended to include language expressly preserving Encana's and other similarly situated parties' rights to assert appropriate defenses to any avoidance action relating to mineral interest payments.

**B.     The Mineral Interest Payment Order Should Preserve the Value of the Debtors' Estates *Without* Impairing the Rights of Mineral Interest Owners.**

16.     Courts in the Fifth Circuit have recognized that it is appropriate to authorize the payment of prepetition obligations where necessary to protect and preserve the estate, including an operating business's going-concern value. *See, e.g.*, *In re CoServ, L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002) (authorizing payment of certain prepetition claims pursuant to "doctrine of necessity"); *In re Equalnet Commc'ns Corp.*, 258 B.R. 368, 369–70 (Bankr. S.D. Tex. 2000) (business transactions critical to the survival of the business of the debtor are exceptions to the general rule of nonpayment of prepetition claims prior to plan confirmation); *see also In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989) ("The ability of a Bankruptcy Court to authorize the payment of prepetition debt when such payment is needed to facilitate the rehabilitation of the debtor is not a novel concept."); *Armstrong World Indus., Inc. v. James A. Phillips, Inc., (In re James A. Phillips, Inc.*), 29 B.R. 391, 398 (S.D.N.Y. 1983).  In doing so, these

8

courts acknowledge that several legal theories rooted in sections 105(a), 363(b), and 1107(a) of the Bankruptcy Code support the payment of prepetition claims as provided herein.

17.     Section 363(b) of the Bankruptcy Code permits a debtor, subject to court approval, to pay prepetition obligations where a sound business purpose exists for doing so. *See Ionosphere Clubs,* 98 B.R. at 175 (noting that section 363(b) provides "broad flexibility" to authorize a debtor to honor prepetition claims where supported by an appropriate business justification).  In addition, under section 1107(a) of the Bankruptcy Code, a debtor in possession has, among other things, the "implied duty of the debtor-in-possession to 'protect and preserve the estate, including an operating business' going-concern value.'" *In re CEI Roofing, Inc.*, 315 B.R. 50, 59 (Bankr. N.D. Tex. 2004) (quoting *In re CoServ*, *L.L.C.*, 273 B.R. at 497).  Moreover, under section 105(a) of the Bankruptcy Code, "the Court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of the Bankruptcy Code." 11 U.S.C. § 105(a); *In re CoServ, L.L.C.*, 273 B.R. at 497 (finding that sections 105 and 1107 of the Bankruptcy Code provide the authority for a debtor-in-possession to pay prepetition claims); *In re CEI Roofing, Inc.*, 315 B.R. at 56; *In re Mirant Corp.*, 296 B.R. 427 (Bankr. N.D. Tex. 2003).

18.     The above-referenced sections of the Bankruptcy Code therefore authorize the postpetition payment of prepetition claims when the payments are critical to preserving the going-concern value of the debtor's estate, as is the case here. *See, e.g*., *In re CoServ*, *L.L.C.*, 273 B.R. at 497 ("[I]t is only logical that the bankruptcy court be able to use [s]ection 105(a) of the [Bankruptcy] Code to authorize satisfaction of the prepetition claim in aid of preservation or enhancement of the estate.").

19.     Paragraph 4 of the Mineral Interest Payment Order provides:

If any holder of a Mineral and Other Interest, Non-Op Working Interest, or right to payment under the JIBs, or any other party accepts payment on account of any

9

Mineral Obligations under this Final Order, and the Debtors' interests in such payments on account of Mineral Obligations subsequently are recharacterized or otherwise determined by the Court after notice and a hearing to constitute property of the Debtors' estates, the Debtors are authorized, but not directed, to avoid such payment as a postpetition transfer under section 549 of the Bankruptcy Code, and the holder of such Mineral and Other Interest, Non-Op Working Interest, or right to payment under the JIBs, or other party who had accepted such payment shall be required to immediately repay to the Debtors any payment made to it on account of its asserted claim to the extent the aggregate amount of such payments exceeds the postpetition obligations then outstanding, without the right of setoff, claims, provision for payment of reclamation or trust fund claims, or otherwise.

20.     Because this paragraph refers to immediate repayment, it appears that avoidance and claw back could be accomplished automatically upon a finding that any funds released pursuant to the Mineral Interest Payment Motion constituted property of the estate.  However, avoidance should not be permitted if the payment of such funds was necessary to preserve the value of the Debtors' estates.

21.     By way of example, payments by the Debtors for their share of operating expenses made on JIBs are clearly transfers of property of the Debtors' estates; however, such payments are justified because the operator/joint interest owner could recoup any unpaid amounts against the Debtors' share of production proceeds until such amounts are fully satisfied. *See, e.g.*, *Marlin Oil Corp. v. Lurie*, No. 09-0482, 2010 WL 2901003 at *4 (W.D. Okla. 2010); *In re Holford,* 896 F.2d 176, 179 (5th Cir. 1990); Articles VII(B) and VII(D)(1)-(3) of the A.A.P.L. Form 610 – 1989 Model Form Operating Agreement.  Notably, recoupment may be enacted without a motion to lift the automatic stay.  *See, e.g., In re Holford*, 896 F.2d at 179; *In re McWilliams*, 384 B.R. 728, 729 (Bankr. D.N.J. 2008).

22.     For properties governed by a joint operating agreement, such operating agreements typically grant reciprocal liens and security interests to the operator and non-operators to secure performance of obligations, which liens and security interests apply to both the mineral interests and the production proceeds produced therefrom within the contract area.  *See, e.g.*, Article VII(B)

10

of the A.A.P.L. Form 610 – 1989 Model Form Operating Agreement.  Similarly, Oklahoma statutes (and pooling orders generally) provide operators a lien on mineral interests and production proceeds to secure payment of costs incurred in the development and operation of wells under the pooling order.  *See, e.g.*, 52 OK Stat § 52-87.1(e) ("The operator of such unit, in additional to any other right provided by the pooling order or orders of the Commission, shall have a lien on the mineral leasehold estate or rights owned by the other owners therein and upon their shares of the production from such unit to the extent that costs incurred in the development and operation upon the unit are a charge against such interests by order of the Commission or by operation of law.")

23.     Thus, in situations in which a Debtor is a non-operating working interest owner or an operating working interest owner, the failure to pay amounts owed to counterparties would have a negative effect on the Debtors' ability to reorganize or liquidate its assets.  Even if such funds were property of the estate, the Debtors' obligations are likely secured under Oklahoma law or Texas law by consensual and statutory liens.[9]

24.     Additionally, if the Debtors claw back payments owed to joint interest owners, such parties may also have additional remedies such as the removal of a Debtor as operator, deemed non-consent penalties or other penalties under joint operating agreements.  *See, e.g.*, Article VII(D)(1)-(3) of the A.A.P.L. Form 610 – 1989 Model Form Operating Agreement.  Parties may also be entitled to recover costs and attorneys' fees if such funds are clawed back, which costs and fees may be secured by the contractual lien included in most operating agreements.  *See, e.g.*,

---

[9] Additionally, Texas and Oklahoma law also grant an automatically perfected statutory lien to "interest owners" to secure the obligations of the "first purchaser of oil and gas production, as debtor, to pay the purchase price." TEX. BUS. & COM. CODE ANN. § 9.343(a) & (r); *see also* 52 OK Stat § 52-549.3.  The operator may qualify as the "first purchaser" under the statute where the "operator . . . receives production proceeds from a third-party purchaser who acts in good faith under a division order or other agreement authenticated by the operator under which the operator collects proceeds of production on behalf of other interest owners." TEX. BUS. & COM. CODE ANN. § 9.343(r)(3); *see also In re Tri-Union Dev. Corp.*, 253 B.R. 808, 815 (S.D. Tex. 2000) (finding an automatically perfected security interest in the oil and gas production and its proceeds in the debtor's possession).

Article VII(D)(5) of the A.A.P.L. Form 610 – 1989 Model Form Operating Agreement. Significant penalties may also apply. *See, e.g.,* Tex. Nat. Res. Code Ann. § 52.131 (West) (providing for a penalty of five percent if the royalty is not paid when due, and an additional five percent if not paid within thirty-one days).[10]

25.     Thus, the non-payment of funds attributable to mineral interest owners would give rise to numerous potential rights and claims by the respective mineral interest owner against the estate.  And, all such rights and claims should be expressly preserved if the Debtor is preserving the right to claw back such payments under section 549.[11]

26.     Accordingly, the Mineral Interest Payment Order should include the following protective language:

> If any holder of Mineral and Other Interests or Non-Op Working Interests, or any other party accepts payment on account of Mineral Obligations under this Final Order, and the Debtors' interests in such payments on account of Mineral Obligations subsequently are recharacterized or otherwise determined by the Court after notice and a hearing (i) to constitute property of the Debtors' estates, (ii) not to give rise to a statutory, contractual or other lien, privilege, or security interest, and (iii) not to be subject to recoupment or other rights or defenses that would justify payment by the Debtors, the Debtors are authorized, but not directed, to seek to avoid such payment as a postpetition transfer under section 549 of the Bankruptcy Code, ~~and the holder of Mineral and Other Interests or Non-Op~~

---

[10] Some leases also have termination provisions that could be triggered by the failure to pay, and some courts have held that such provisions can be enforced without a motion to lift the automatic stay. *See Trigg v. United States (In re Trigg)*, 630 F.2d 1370, 1372-75 (10th Cir. 1980) (holding under the former Bankruptcy Act and former Bankruptcy Rule 11-44, that automatic contractual termination as a consequence of nonpayment of rental payments were not stayed post-petition); *see also Good Hope Refineries, Inc. v. Benavides*, 602 F.2d 998, 1002 (1st Cir. 1979) (automatic termination of an oil and gas lease for nonpayment of delay rentals do not constitute a "proceeding" within the meaning of the Bankruptcy Act's automatic stay provisions).

[11] The avoidance and claw back of such funds could also subject the Debtors to actions for breach of contract, conversion, breach of fiduciary duty, and other claims and causes of action. *See, e.g.*, *Reserve Oil, Inc. v. Dixon*, 711 F.2d 951, 953 (10th Cir. 1983) (reversing decision to dismiss conversion and breach of fiduciary duty actions based on failure to pay working interest owners and remanding to determine liability); *Ferguson v. Coronado Oil Co.*, 884 P.2d 971, 978 (Wyo. 1994); *Covington v. Exxon Co.*, 551 So.2d 935, 938-39 (Ala. 1989); William & Meyers §§ 656.5–656.6.  And, courts have held that an operating agreement can be treated as a farmout agreement under the Bankruptcy Code, which can result in treble damages for the failure to pay a Non-Operator its proportionate share of production proceeds. *TransTexas Gas Corp. v. Forcenergy Onshore, Inc.*, 13-10-00446-CV, 2012 WL 1255218, at *5 (Tex. App.—Corpus Christi Apr. 12, 2012, pet. denied).

12

~~Working Interests, or right to payment under the JIBS, or other party who had accepted such payment shall be required to immediately repay to the Debtors any payment made to it on account of its asserted claim to the extent the aggregate amount of such payments exceeds the postpetition obligations then outstanding, without the right of setoff, claims, provision for payment of reclamation or trust fund claims, or otherwise~~ subject to any defenses or rights any holder of Mineral and Other Interests or Non-Op Working Interests, or other party who had accepted such payment may have, including that avoidance is not in the best interest of the estates.  In determining whether to seek to avoid any payments made pursuant to this Order, the Debtors may consider whether, even if the Debtors' interest in such payments is property of the estates, avoidance would subject the Debtors' estates to secured claims, unnecessary or expensive litigation, increased administrative expenses, penalties, interest, fees, or costs, or whether avoidance would otherwise harm the Debtors' estates.  To the extent that any payment is avoided, the avoidance shall not in any way diminish the rights, remedies, or defenses that the party from whom the payment is avoided would have otherwise been able to assert had such party not accepted payment pursuant to this Order, and such party shall be placed in the same position that it would have been in, vis-à-vis the Debtors and other parties, if the payment had not been made.

27.    Without these amendments to the Mineral Interest Payment Order, the property interests of Encana (and other mineral interest owners) will be unfairly and unnecessarily prejudiced.

## V.
## CONCLUSION

WHEREFORE, Encana respectfully requests that this Court (i) reconsider the Mineral Interest Payment Order, (ii) enter an amended order that includes the protective language requested above, and (iii) grants Encana such other and further relief as the Court deems proper, both at law and in equity.

*[concluded on the following page]*

503411.000022 22108860.6

Dated: April 15, 2019

THOMPSON & KNIGHT LLP

By: */s/ Tye C. Hancock*

Tye C. Hancock
Texas State Bar No. 24032271
Anthony F. Pirraglia
Texas State Bar No. 24103017
811 Main Street, Suite 2500
Houston, Texas 77002
Telephone: 713.654.8111
Fax: 713.654.1871
Tye.Hancock@tklaw.com
Anthony.Pirraglia@tklaw.com

**ATTORNEYS FOR ENCANA**

### CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served on all parties entitled to notice via the Court's electronic notification system on this 15th day of April, 2019.

*/s/ Tye C. Hancock*
Tye C. Hancock

14