## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| VANGUARD NATURAL RESOURCES, INC., *et al.*,[1] | Case No. 19-31786 (DRJ) |
| Debtors. | (Jointly Administered) |

### DEBTORS' MOTION FOR ENTRY OF AN
### ORDER EXTENDING THEIR EXCLUSIVITY PERIODS TO
### FILE A CHAPTER 11 PLAN AND SOLICIT ACCEPTANCES THEREOF

> **A HEARING WILL BE CONDUCTED ON THIS MATTER ON JULY 24, 2019 AT 2:15 PM IN COURTROOM 400, 4th FLOOR, UNITED STATES BANKRUPTCY COURT FOR THE SOUTHERN DISTRICT OF TEXAS, 515 RUSK AVENUE, HOUSTON, TEXAS.**
>
> **IF YOU OBJECT TO THE RELIEF REQUESTED, YOU MUST RESPOND IN WRITING, SPECIFICALLY ANSWERING EACH PARAGRAPH OF THIS PLEADING. UNLESS OTHERWISE DIRECTED BY THE COURT, YOU MUST FILE YOUR RESPONSE WITH THE CLERK OF THE BANKRUPTCY COURT WITHIN TWENTY-ONE DAYS FROM THE DATE YOU WERE SERVED WITH THIS PLEADING. YOU MUST SERVE A COPY OF YOUR RESPONSE ON THE PERSON WHO SENT YOU THE NOTICE; OTHERWISE, THE COURT MAY TREAT THE PLEADING AS UNOPPOSED AND GRANT THE RELIEF REQUESTED.**
>
> **REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.**

The above-captioned debtors and debtors in possession (collectively, the "Debtors")[2] respectfully state as follows in support of this motion (this "Motion").

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Vanguard Natural Resources, Inc. (1494); Eagle Rock Acquisition Partnership, L.P. (6706); Eagle Rock Acquisition Partnership II, L.P. (0903); Eagle Rock Energy Acquisition Co., Inc. (4564); Eagle Rock Energy Acquisition Co. II, Inc. (3364); Eagle Rock Upstream Development Company, Inc. (0113); Eagle Rock Upstream Development Company II, Inc. (7453); Escambia Asset Co. LLC (2000); Escambia Operating Co. LLC (3869); Vanguard Natural Gas, LLC (1004); Vanguard Operating, LLC (9331); and VNR Holdings, LLC (6371). The location of the Debtors' service address is: 5847 San Felipe, Suite 3000, Houston, Texas 77057.

[2] A detailed description of the Debtors and their businesses, and the facts and circumstances supporting the Debtors' chapter 11 cases, are set forth in the *Declaration of R. Scott Sloan, President and Chief Executive Officer of Vanguard Natural Resources, Inc., in Support of Chapter 11 Petitions and First Day Motions [Docket No. 25]* (the "First Day Declaration"), filed on March 31, 2019 (the "Petition Date").

**Preliminary Statement**[3]

1. The Debtors' exclusive right to file a chapter 11 plan expires on July 29, 2019, and the Debtors' exclusive right to solicit votes in favor of a plan expires on September 27, 2019. In just over three months the Debtors' efforts have built considerable consensus around a value-maximizing—and what the Debtors anticipate will be a largely consensual—restructuring transaction. As a result, the Debtors are hopeful to confirm their chapter 11 plan on July 9, 2019. Although the Debtors hope to have their Plan confirmed at the confirmation hearing (with emergence to follow soon thereafter), they file this Motion out of an abundance of caution to extend the Exclusivity Periods by 60 days because the Debtors believe that maintaining the exclusive right to file and solicit votes on a chapter 11 plan is critical to consummating their chapter 11 strategy.

2. The Debtors have used their initial Exclusivity Periods to stabilize their operations, obtain Court approval of important operational programs, file schedules and statements of financial affairs for all Debtors, obtain approval of their debtor-in-possession financing, and commence the development of a new long-term business plan. Over that same time period, the Debtors also engaged in discussions with their key constituents, including three separate ad hoc groups holding the Debtors' prepetition secured debt, the Committee, and the Office of the U.S. Trustee. These discussions, in turn, cleared the way for entry of all of the Debtors' first-day and second-day orders on a largely consensual basis, agreement on the terms of a plan support agreement with every funded debt constituency, and, most recently, a settlement with the Committee regarding the Debtors' proposed treatment of General Unsecured Claims.

---

[3]  Capitalized terms used but not defined in this Preliminary Statement have the meanings given to such terms elsewhere in the Motion.

3. More specifically, having achieved a soft landing into chapter 11 and commenced stakeholder discussions, the Debtors focused their full attention to maximizing stakeholder value by pursuing their key restructuring initiatives, including:

   a. ***Initial Plan Support Agreement***. The Debtors and certain of their major stakeholders entered into that certain plan support agreement (the "Initial Plan Support Agreement"), dated as of May 8, 2019. The Initial Plan Support Agreement had support from holders of more than 66 2/3 percent in principal amount of each of the Revolving Credit Facility Claims, the Secured Swap Claims, and the Term Loan Claims. The broad consensus embodied in the Initial Plan Support Agreement provided a sound foundation for the Debtors' chapter 11 cases to proceed in an efficient, cost-effective, and value-maximizing manner.

   b. ***Amended Plan Support Agreement***. After an extended period of intense and good faith negotiations, the Initial Plan Support Agreement was amended and executed (the resulting agreement, the "Amended Plan Support Agreement") on July 2, 2019. The Amended Plan Support Agreement reflects additional support for the Debtors' Plan, from more than 66 2/3 percent in principal amount of the Senior Notes Claims. As evidenced by the Amended Plan Support Agreement, the Debtors' Plan now enjoys critical support from all levels of their funded debt structure.

   c. ***Chapter 11 Plan and Disclosure Statement***. On June 11, 2019, the Debtors filed their *Amended Joint Plan of Reorganization of Vanguard Natural Resources, Inc. and Its Debtor Affiliates* (as amended or modified from time to time, the "Plan") [Docket No. 472]. After the Court's approval of the Debtors' amended Disclosure Statement [Docket No. 473] on June 12, 2019 (and on a fully consensual basis, having resolved all objections for Disclosure Statement purposes), the Debtors commenced solicitation.

   d. ***Committee Settlement***. The Debtors reached a settlement with the Committee on July 3, 2019 (the "Committee Settlement"), the terms of which are documented in the *Term Sheet of Settlement of Debtors and the Prepetition First Lien Agent with the Official Committee of Unsecured Creditors* [Docket No. 537]. With the Amended Plan Support Agreement and Committee Settlement executed, the Debtors' Plan is expected to be confirmed on a largely consensual basis.

   e. ***Production and Discovery Efforts***. The Debtors responded to numerous discovery requests with respect to the Committee's investigation. To date, the Debtors have collected, reviewed, and produced thousands of documents. Additionally, the Debtors worked with secured and unsecured creditors to extend the challenge period with respect to the Debtors, the Committee, and the Committee members to provide those parties with

additional time to complete their investigations and engage in restructuring discussions.

f. ***Contracts and Leases***. The Debtors are running a robust process to schedule and evaluate their executory contracts and unexpired leases. Whereas the Debtors and their predecessors identified fewer than 1500 contracts and leases in their first bankruptcy,[4] the Debtors started a top-down, comprehensive analysis of their contracts and leases with respect to these chapter 11 cases before the Petition Date and have identified almost 30,000 contracts and leases. The Debtors are now evaluating whether to restructure, replace, or terminate their existing contracts and leases using the tools available in chapter 11.

g. ***Claims Resolution Process***. On May 6, 2019, the Debtors filed their schedules of assets and liabilities and statements of financial affairs, and the Debtors filed certain amendments on June 7, 2019. Since the Petition Date, parties in interest have filed approximately 1300 proofs of claim against the Debtors' estates. On June 25, 2019, the Debtors filed three omnibus objections to certain claims. The Debtors continue to evaluate claims that have been asserted, or that may be asserted, against their estates.

4. The Debtors have achieved their progress to date in no small part due to the breathing room provided by chapter 11. Extending the Exclusivity Periods will not prejudice any parties in interest and will afford the Debtors and their stakeholders time to seek to confirm the Plan, complete related definitive documentation regarding the Plan, and proceed toward consummation of these chapter 11 cases in an efficient, organized fashion.

**Relief Requested**

5. The Debtors seek entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Order"), extending the period during which the Debtors have the exclusive right to file a chapter 11 plan (the "Filing Exclusivity Period") through and including September 27, 2019 and the period during which the Debtors have the exclusive right to solicit a plan filed during the Filing Exclusivity Period (the "Solicitation Exclusivity Period" and together

---

[4] *See In re Vanguard Nat. Res., LLC*, No. 17-30560 (MI) (Bankr. S.D. Tex. Feb. 1, 2017).

with the Filing Exclusivity Period, the "Exclusivity Periods") through and including November 26, 2019.

## Jurisdiction and Venue

6. The United States Bankruptcy Court for the Southern District of Texas (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. The Debtors confirm their consent, pursuant to rule 7008 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

7. The basis for the relief requested herein is section 1121 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code").

## Background

8. Vanguard Natural Resources, Inc. and its Debtor affiliates are an oil and natural gas company with production and development activities in the Rocky Mountain, Mid-Continent, Gulf Coast, and West Texas regions of the United States. The Debtors conduct their exploration and production activities across eight states in nine geographic basins. The Debtors' assets predominately are mature properties with long-lived production, relatively predictable decline curves, and lower-risk development opportunities. Headquartered in Houston, Texas, the Debtors have approximately 295 employees. The Debtors' revenue for the twelve-month period that ended December 31, 2018 was approximately $469.5 million, and, as of the Petition Date, the Debtors have approximately $929.5 million in total funded debt obligations.

9. On the Petition Date, each Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtors are operating their businesses and managing

their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. On April 1, 2019, the Court entered an order authorizing procedural consolidation and joint administration of these chapter 11 cases pursuant to Bankruptcy Rule 1015(b) [Docket No. 33]. No request for the appointment of a trustee or examiner has been made in these chapter 11 cases. On April 11, 2019, the United States Trustee for the Southern District of Texas (the "U.S. Trustee") appointed the official committee of unsecured creditors pursuant to section 1102 of the Bankruptcy Code (the "Committee") [Docket No. 149].

## Basis for Relief

10. Section 1121(b) of the Bankruptcy Code establishes an initial period of 120 days after the commencement of a chapter 11 case during which only a debtor may file a plan and an additional 60-day period thereafter during which only the debtor may solicit votes for a plan. Currently, the Filing Exclusivity Period will expire on July 29, 2019, and the Solicitation Exclusivity Period will expire on September 27, 2019. The Debtors believe it is prudent to seek an extension of the Exclusivity Periods to preserve their exclusive right to both prosecute the Plan currently on file and file and solicit a new plan of reorganization should unforeseen issues arise with respect to confirmation.

11. Section 1121(d)(1) of the Bankruptcy Code permits a court to extend a debtor's exclusivity "for cause." Although the Bankruptcy Code does not define "cause," bankruptcy courts have discretion to extend exclusivity to promote the orderly, consensual, and successful reorganization of a debtor's affairs. *See In re Timbers of Inwood Forest Assocs., Ltd.*, 808 F.2d 363, 372 (5th Cir. 1987) (noting that the meaning of "cause" under section 1121 should be viewed in context of the Bankruptcy Code's goal of fostering reorganization); *In re Mirant Corp.*, No. 4-04-CV-476-A, 2004 WL 2250986, at *2 (N.D. Tex. Sept. 30, 2004)

(noting that an extension of exclusivity has typically been granted where "the debtor showed substantial progress had been made in negotiations toward reorganization").

12.     Courts within the Fifth Circuit have held that the decision to extend exclusivity periods is left to the sound discretion of a bankruptcy court and should be based on the totality of circumstances in each case.  *See Mirant*, 2004 WL 2250986, at * 3 (noting that the decision to extend exclusivity "lies within the bankruptcy court's discretion"); *In re Express One Int'l, Inc.*, 194 B.R. 98, 100–01 (Bankr. E.D. Tex. 1996) (extending exclusivity based on the totality of the circumstances).  Courts often use the following factors in determining whether "cause" exists to extend a debtor's exclusive plan filing period:

   a.   the size and complexity of the case;

   b.   the need for sufficient time to permit the debtor to negotiate a plan of reorganization and prepare adequate information;

   c.   whether the debtor has made progress in negotiations with its creditors;

   d.   the existence of good faith progress toward reorganization;

   e.   whether the debtor is seeking to extend exclusivity to pressure creditors to accede to the debtor's reorganization demands;

   f.   whether the debtor has demonstrated reasonable prospects for filing a viable plan;

   g.   the fact that the debtor is paying its bills as they become due;

   h.   the amount of time which has elapsed in the case; and/or

   i.   whether an unresolved contingency exists.

*See, e.g.*, *In re New Millennium Mgmt., LLC*, No. 13-35719 (LZP), 2014 WL 792115, at *6 (Bankr. S.D. Tex. Feb. 25, 2014) (listing factors relevant to whether "cause" exists to extend exclusivity periods) (citing *In re GMG Cap. Partners III, L.P.*, 503 B.R. 596 (Bankr. S.D.N.Y. 2014)); *see also In re Adelphia Commc'ns Corp.*, 336 B.R. 610, 674–75 (Bankr. S.D.N.Y. 2006) (denying motion to terminate exclusivity based on factors for cause).

13. Not all factors are relevant to every case, and the existence of even one of the above-listed factors may be sufficient to extend a debtor's exclusivity periods. *See, e.g.*, *Express One*, 194 B.R. at 100–01 (listing all nine factors later set forth in *Adelphia*, but relying on only a few relevant in determining whether there was "cause" to extend exclusivity). Further, courts regularly grant a debtor's first request for an extension of the debtor's exclusive period to file a chapter 11 plan. *See In re Apex Pharm., Inc.*, 203 B.R. 432, 441 (N.D. Ind. 1996) ("It is true that during the initial 120-day period in which debtors have an exclusive right to file a plan of reorganization . . . the bankruptcy courts apply a lesser standard in determining whether the burden of showing 'a reasonable possibility of a successful reorganization within a reasonable time' has been satisfied.") (citation omitted); *see also In re Borders Grp., Inc.*, 460 B.R. 818, 825 (Bankr. S.D.N.Y. 2011) ("During the initial 120 day 'exclusive' period, bankruptcy courts have applied a lesser standard in determining whether the burden of showing 'a reasonable possibility of a successful reorganization within a reasonable time' has been satisfied.") (citation omitted).

14. Courts in this district have approved similar relief in other complex chapter 11 cases. *See, e.g.*, *In re Westmoreland Coal Company*, No. 18-35672 (DRJ) (Bankr. S.D. Tex. Jan. 16, 2019) (granting an initial exclusivity extension of 120 days with respect to the WMLP Debtors); *In re iHeartMedia, Inc.*, No. 18-31274 (MI) (Bankr. S.D. Tex. July 10, 2018 (granting an initial exclusivity extension of 135 days)*; In re Seadrill Ltd.*, No. 17-60079 (DRJ) (Bankr. S.D. Tex. Jan. 8, 2018) (granting an initial exclusivity extension of 120 days); *In re GenOn Energy, Inc.*, No. 17- 33695 (DRJ) (Bankr. S.D. Tex. Oct. 3, 2017) (granting an initial exclusivity extension

of 182 days); *In re CJ Holding Co.*, No. 16-33590 (DRJ) (Bankr. S.D. Tex. Nov. 3, 2016) (granting an initial exclusivity extension of 120 days).[5]

15. Here, the relevant factors strongly favor extensions of the Debtors' Exclusivity Periods.

**I.    The Debtors' Chapter 11 Cases Are Large and Complex.**

16. The wide scope of the Debtors' operations and size of their capital structure means the Debtors must navigate a number of complex issues during these chapter 11 cases. As noted above, the Debtors conduct exploration and production activities across eight states in nine geographic basins. As of the Petition Date, the Debtors had approximately $929.5 million of outstanding funded-debt obligations, consisting of obligations under a Revolving Credit Facility, a Term Loan, and the Senior Notes. The Debtors also have obligations to hundreds of vendors, employees, government agencies, and contractual counterparties. Further, the Debtors are negotiating with multiple parties in interest that have taken an active role in these chapter 11 cases, including three ad hoc groups of secured creditors and the Committee, among others. Notwithstanding these complexities, the Debtors have made significant progress towards confirming the Plan.

17. Finally, the Debtors' businesses are operating in a very uncertain environment. Due to the macroeconomic pressures from uncertain commodity prices, the markets in which the Debtors' businesses operate continue to evolve, making the Debtors' restructuring even more complicated and challenging. There can be no question, then, that the size and complexity of these

---

[5] Because of the voluminous nature of the orders cited herein, such orders have not been attached to this Motion. Copies of these orders are available upon request of the Debtors' counsel.

chapter 11 cases (as exacerbated by the volatile commodities pricing environment) weigh in favor of extending the Exclusivity Periods.

18.  Both Congress and courts have acknowledged that the size and complexity of a debtor's case alone may provide cause for extending a debtor's exclusivity periods. *See Express One*, 194 B.R. at 100–01 (approving the debtor's third exclusivity extension and noting that "the traditional ground for cause is the large size of the debtor and the concomitant difficulty in formulating a plan of reorganization"). Certainly, the size and complexity of these chapter 11 cases alone provides sufficient cause for the Court to extend the Exclusivity Periods.

## II. The Debtors Have Negotiated a Consensual Restructuring With a Substantial Number of their Most Significant Stakeholders and Have Materially Progressed Toward Effectuating that Restructuring.

19.  Leading up to and since the Petition Date, the Debtors have made substantial progress in negotiating with their stakeholders and administering these chapter 11 cases, which further warrants an extension of the Exclusivity Periods. The Debtors' progress to date includes the following accomplishments:

   a.  ***Obtaining Critical Financial and Operational Relief***. The Debtors stabilized their business operations through various forms of operational first and second-day relief. On April 30, 2019, the Court granted final approval of the Debtors' obtaining postpetition financing and using cash collateral, which will provide the liquidity needed to fund the administration of these chapter 11 cases.

   b.  ***Filing Schedules of Assets and Liabilities and Statements of Financial Affairs***. On May 6, 2019, the Debtors filed their schedules and statements of financial affairs for all 12 Debtor entities. On June 7, 2019, the Debtors filed amended schedules and statements.

   c.  ***Plan Support Agreement***. The Debtors worked to achieve substantial stakeholder support for a comprehensive restructuring, which was embodied first in the Initial Plan Support Agreement and then in the Amended Plan Support Agreement. The Amended Plan Support Agreement is supported by holders of greater than 66 2/3 percent in principal amount of each of the Revolving Credit Facility Claims, the Secured Swap Claims, the Term Loan Claims, and the Senior Notes Claims.

d. ***Filing and Soliciting a Chapter 11 Plan and Disclosure Statement***. The Debtors filed initial versions of the Plan and Disclosure Statement on April 30, 2019 and filed amended versions of the same on June 11, 2019. The Debtors began soliciting votes on the Plan on June 14, 2019.

e. ***Committee Settlement***. The Debtors' and Committee's negotiation efforts culminated in the parties agreeing to the terms of the Committee Settlement on July 3, 2019.

f. ***Assisting Key Stakeholders with Due Diligence Efforts***. The Debtors have expended significant effort in assisting the Committee, the Noteholder Group, and the Ad Hoc Term Loan Lender Group with conducting due diligence, including providing documents, hosting in-person conferences, and holding multiple telephone conferences.

20. The Debtors' substantial progress in working with their stakeholders and administering their chapter 11 cases to this point supports the extension of the Exclusivity Periods. *See Mirant Corp.*, 2004 WL 2250986, at *2 (noting that an exclusivity extension has typically been granted where a debtor has shown substantial progress toward reorganization).

### III. An Extension of the Exclusivity Periods Will Not Prejudice Creditors.

21. The Plan is supported by holders of a substantial majority of outstanding funded debt obligations across the Debtors' capital structure, and the Debtors have consistently sought to build further consensus. Indeed, the Debtors have worked diligently to evaluate restructuring alternatives and have coordinated and will continue to coordinate with their major stakeholders and the Committee. The results so far indicate that a largely consensual restructuring is within reach, but the complexity of these chapter 11 cases evidences the need for additional time for the Debtors to consult and negotiate with their stakeholders. Accordingly, the Debtors are not seeking an extension to pressure their creditors or other parties in interest; rather, the Debtors are seeking an extension to facilitate continued engagement with creditors in an effort to build further consensus.

**IV.    The Debtors Are Paying Their Bills as They Come Due.**

22.    The Debtors have paid their undisputed postpetition debts in the ordinary course of business or as otherwise provided by Court order.

**V.    Relatively Little Time Has Elapsed in These Chapter 11 Cases.**

23.    This request for an extension of the Exclusivity Periods is the Debtors' first and comes approximately three months into these chapter 11 cases. Courts regularly grant a debtor's request for an initial exclusivity extension. The fact that these chapter 11 cases are at a relatively early stage further supports the requested extension.

**VI.    An Extension of the Exclusivity Periods Is in the Best Interest of All Parties in Interest.**

24.    The Debtors seek to maintain exclusivity so parties with competing interests do not impede the Debtors' pursuit of the highly-consensual, value-maximizing restructuring transactions contemplated by the Plan Support Agreement and Plan. Extending exclusivity benefits all parties in interest by preventing the drain on time and resources that inevitably occurs when multiple parties with potentially diverging interests vie for the consideration of their own respective plans. All stakeholders benefit from the continued stability and predictability that a centralized process provides, which can only occur while the Debtors remain the sole potential plan proponents. The Debtors have been in extensive communication with all parties in interest to market and improve upon the Plan to the extent possible and will continue such discussions as they seek to build further consensus ahead of confirmation. Moreover, even if the Court approves an extension of the Exclusivity Periods, nothing prevents parties in interest from later arguing to the Court that cause supports termination of the Debtors' exclusivity should such cause arise. Accordingly, an extension of the Exclusivity Periods is in the best interest of the Debtors' estates, their creditors, and all other parties in interest.

**Notice**

25. The Debtors will provide notice of this Motion to the following parties: (a) the Office of the U.S. Trustee for the Southern District of Texas; (b) counsel to the Committee; (c) the administrative agent under the Debtors' prepetition revolving credit facility and prepetition term loan facility and counsel thereto; (d) the lenders under the Debtors' prepetition revolving credit facility; (e) the lenders under the Debtors' prepetition term loan facility; (f) the indenture trustee for the Debtors' prepetition second lien notes and counsel thereto; (g) the lenders under the Debtors' prepetition second lien notes; (h) the administrative agent under the Debtors' proposed postpetition debtor in possession financing facility and counsel thereto; (i) the United States Attorney's Office for the Southern District of Texas; (j) the Internal Revenue Service; (k) the United States Securities and Exchange Commission; (l) the Environmental Protection Agency and similar state environmental agencies for states in which the Debtors conduct business; (m) the state attorneys general for states in which the Debtors conduct business; and (n) any party that has requested notice pursuant to Bankruptcy Rule 2002. The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

**No Prior Request**

26. No prior motion for the relief requested herein has been made to this or any other court.

WHEREFORE, the Debtors respectfully request that the Court enter the Order, granting the relief requested herein and such other relief as the Court deems appropriate under the circumstances.

| | |
|---|---|
| Houston, Texas<br>July 3, 2019 | Respectfully Submitted,<br><br>*/s/ Brian E. Schartz, P.C.* |
| **BLANK ROME LLP**<br>James T. Grogan (TX Bar No. 24027354)<br>Philip M. Guffy (TX Bar No. 24113705)<br>717 Texas Avenue, Suite 1400<br>Houston, Texas 77002<br>Telephone: (713) 228-6601<br>Facsimile: (713) 228-6605<br>Email: jgrogan@blankrome.com<br>pguffy@blankrome.com | **KIRKLAND & ELLIS LLP**<br>**KIRKLAND & ELLIS INTERNATIONAL LLP**<br>Brian E. Schartz, P.C. (TX Bar No. 24099361)<br>609 Main Street<br>Houston, Texas 77002<br>Telephone: (713) 836-3600<br>Facsimile: (713) 836-3601<br>Email: brian.schartz@kirkland.com<br><br>-and-<br><br>Christopher Marcus, P.C. (admitted *pro hac vice*)<br>Aparna Yenamandra (admitted *pro hac vice*)<br>601 Lexington Avenue<br>New York, New York 10022<br>Telephone: (212) 446-4800<br>Facsimile: (212) 446-4900<br>Email: christopher.marcus@kirkland.com<br>aparna.yenamandra@kirkland.com |

*Co-Counsel for the Debtors and Debtors in Possession*

**Certificate of Service**

I certify that on July 3, 2019, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

*/s/ Brian E. Schartz, P.C.*
Brian E. Schartz